J-A20040-21
J-A20041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: F.F. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.F., FATHER | : | No. 615 WDA 2021 |

Appeal from the Decree Entered April 26, 2021
In the Court of Common Pleas of Indiana County Orphans' Court
at No(s): 32-21-0046

| | | |
|---|---|---|
| IN THE INTEREST OF: F.F. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.F., MOTHER | : | No. 632 WDA 2021 |

Appeal from the Decree Entered April 26, 2021
In the Court of Common Pleas of Indiana County Orphans' Court
at No(s): No. 32-21-0046

BEFORE:   PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:            **FILED: October 8, 2021**

We address together these two appeals, which concern the minor, dependent child, F.F. (Child), born in November 2014.  G.F. (Father) and D.F. (Mother) separately appeal from the same decree entered in the Indiana County Court of Common Pleas, Orphans' Court, granting the petitions of Indiana County Children and Youth Services (CYS) to involuntarily terminate

their parental rights.[1]  In addition, Father's attorney, Erica D. Dussault, Esquire (Counsel), has filed an **Anders**[2] petition to withdraw and brief.  After review, we grant Counsel's petition to withdraw and affirm the orphans' court's decree at both parties' appeals.[3]

## I.  Facts & Procedural History

The orphans' court summarized the procedural and factual history as follows:[4]

> CYS first became involved with this matter after several referrals regarding concerns of financial instability, parenting, mental health, substance abuse, lack of adequate supervision, and domestic violence.  Then, on or about July 6, 2019, [when Child was four years old,] a domestic violence incident took place in the home; Mother alleged that Father held a gun and threatened to kill her while she was holding Child.

Orphans' Ct. Op., 4/26/21, at 1.  As a result of this incident, Father was arrested, and ultimately found guilty by a jury of, *inter alia*, endangering the welfare of a child.  N.T., 2/24/21, at 53-54.  Father has not had contact with

---

[1] **See** 23 Pa.C.S. § 2511(a)(2), (b).

[2] **Anders v. California**, 386 U.S. 738 (1967).

[3] With respect to Father's appeal, CYS, along with Child's guardian *ad litem* and legal counsel, have indicated they will not file a brief.  CYS has filed a brief in Mother's appeal.

[4] For ease of review, we have shortened the orphans' courts references to "Natural Mother," "Natural Father," and "the minor child" to, respectively, "Mother," "Father," and "Child."  Additionally, we have replaced the court's references to "the Agency" with "CYS."

Child since July of 2019. *Id.* at 54-55. He was incarcerated at Indiana County

Jail, and has been housed at SCI Mercer since July 7, 2020. *Id.* at 49, 51.

The orphans' court summarized:

Father remains incarcerated, and has a minimum [release] date of July 6, 2021, and a maximum date of July 6, 2024. There is a Protection From Abuse Order in place against Father[, in favor of Child and Mother,] that expires on July 24, 2022. . . .

On October 15, 2019, a caseworker met with Mother to develop a Safety Plan; Maternal Grandmother was identified as a safety person. The next day, October 16[,] Mother appeared in Court for a Permanency Review Hearing for her older child while seemingly intoxicated. Mother was drug screened; she tested positive for marijuana and several other illegal substances. The Safety Plan was then updated to provide that Child would reside with Maternal Grandmother outside of Mother's home.

In time, apprehension was expressed by Maternal Grandmother; she was concerned that she would be unable to provide Child with a safe home due to the aggressive actions of Mother. On November 14, 2019, this Court found that Child was a dependent child and ordered [him] to be placed in the care, custody, and control of CYS. Child was placed in a licensed foster home [that same day]. The Court held Permanency Review Hearings on February 13[,] August 6[,] November 5, 2020, and February 24, 2021.[5]

Orphans' Ct. Op. at 2-3.

On January 25, 2021, CYS filed petitions to involuntarily terminate

Father's and Mother's parental rights, pursuant to Subsections 2511(a)(1),

(2), (5), and (8) and (b). The orphans' court conducted a hearing on February

---

[5] We note that the dependency record was not incorporated or otherwise entered as part of the record in the instant termination matter.

24th. Child was six years old at this time, and was represented by both a guardian *ad litem* and legal counsel. Child's guardian *ad litem* argued in support of termination of both parents' rights. N.T. at 154-55. Mother and Father were represented by different counsel, and Father testified by telephone.

> The orphans' court summarized:
>
> The Court received expert testimony from Dr. Carolyn Menta, a clinical psychologist[, who] authored a Psychological Evaluation [and] a supplemental Psychological Evaluation of Mother, a Bonding Assessment of Mother and Child, and a Bonding Assessment of the foster parents and Child. . . . The Court also heard testimony from Jillian Hauser, a certified recovery specialist with Alternative Community Engagement Solutions, LLC [(ACES)[6]], Rachel Pommer, the CYS caseworker assigned to this case, and Mother.

Orphans' Ct. Op. at 4-5. Dr. Menta testified about Mother's "history of significant mental health issues," which included bipolar disorder, post-traumatic stress disorder, opioid abuse in remission, and cannabis abuse in remission. N.T. at 13, 15. Dr. Menta conducted the "MMPI" test, which showed Mother "was honest and forthright," but also suggested she was "prone to psychological disturbance, serious psychological issues[,]" and

---

[6] CYS additionally presented an ACES Monthly Report/Discharge Summary. N.T. at 78.

Meanwhile, Mother presented a letter from Victoria Aaron, her mental health therapist with the Department of Veterans Affairs at the James Van Zandt Medical Center in Altoona, PA. N.T. at 116-18. We observe this exhibit is not included as part of the certified record.

"psychosis, particularly during times of stress." *Id.* at 13-14. Dr. Menta described psychosis as "delusional thinking, auditory and visual hallucinations, normal thought disturbance." *Id.* at 14. In March of 2020, Mother "presented at the emergency room . . . with frank psychosis and at that time was diagnosed with schizoaffective disorder, bipolar type." *Id.* at 15. Dr. Menta also cited "concerns that [Mother] had some individuals staying in her home that were caring for [C]hild who had . . . drug abuse[ and] a history of sexual offenses." *Id.* at 12. Mother's father was also "living on her property and he had served jail time for molesting her in childhood." *Id.* Dr. Menta opined,

> I have significant concerns about [Mother's] ability to put her son's needs above her own. She really had a lack of insight into how the trauma [of the incident of Father brandishing a gun] had affected him, how her own choices and decisions had affected him. She varied in terms of her report on whether she was aware that the individuals . . . living in the home and caring for [Child] had been using drugs or had . . . sexual related charges. . . . [I]t's concerning to me that her need to help individuals and bring them into the home was more important than creating a safe and secure environment for her son.

*Id.* at 18-19.

On April 26, 2021, the orphans' court entered the underlying decree terminating Father's and Mother's parental rights, along with an opinion. The decree did not specify the subsections under which the orphans' court terminated parental rights. Meanwhile, the court's opinion discussed termination of Father's rights under Subsection 2511(a)(8) and Mother's rights under Subsection (a)(2). Orphans' Ct. Op. at 14-15, 17. We note,

however, the opinion was silent as to whether CYS established grounds for termination for each parent under the other subsections.

Father and Mother each filed counseled, timely notices of appeal. Mother's counsel also filed a Pa.R.A.P. 1925(a)(2)(i) concise statements of errors complained of on appeal, while Father's counsel (Counsel) filed a statement of intent to file an **Anders** brief.[7]

## II. Father's Counsel's *Anders* Petition

This Court has explained:

When considering an **Anders** brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw. In order to comply with **Anders** and its Pennsylvania progeny, counsel must:

(1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the defendant, counsel has determined the appeal would be frivolous;

(2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no merit" letter or *amicus curiae* brief; and

---

[7] **See** Pa.R.A.P. 1925(c)(4) ("In a criminal case, counsel may file of record and serve on the judge a statement of intent to file an **Anders**/**Santiago** brief in lieu of filing a Statement."); **In re J.T.**, 983 A.2d 771 (Pa. Super. 2009) (counsel may follow Pa.R.A.P. 1925(c)(4) procedure in a termination of parental rights case). **See also Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

We note the orphans' court directed Counsel to file a Rule 1925(b) statement within 21 days. Despite having filed a Pa.R.A.P. 1925(c)(4) statement of intent to file an **Anders** brief, Counsel complied and filed a statement, which raised the issues subsequently presented in her **Anders** brief.

(3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se* or raise any additional points that he deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citations omitted).

In *Santiago*, our Supreme Court further held:

[I]n the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Finally, counsel must also "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

We further note:

After an appellate court receives an *Anders* brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous.

*In re S.M.B.*, 856 A.2d at 1237.

Here, Counsel's petition to withdraw asserts that she made a conscientious review of the record and determined the appeal would be frivolous. Counsel has also filed a brief that complies with the requirements set forth in *Santiago*. *See Santiago*, 978 A.2d at 361. Finally, we note Counsel attached to her petition a copy of a letter advising Appellant of his

rights. *See Millisock*, 873 A.2d at 752. Hence, we conclude that Counsel has complied with the procedural *Anders* requirements and we proceed to an independent review of the merits. *See In re S.M.B.*, 856 A.2d at 1237.

### III. Standard of Review & Section 2511

We note the relevant standard of review:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. *See* 23 Pa.C.S. § 2511. It requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Here, we analyze the court's decision to terminate pursuant to subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \* \* \*
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> \* \* \*
>
> (8) The child has been removed from the care of the parent by the court . . . 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> \* \* \*
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. . . .

23 Pa.C.S. § 2511(a)(2), (8), (b). We need only agree with the court as to any one subsection of 2511(a), in addition to subsection 2511(b), to affirm.

*In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[ ] § 2511(a)(2), the following three elements must be met: (1)

repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Our Supreme Court has addressed Sub-section 2511(a)(2) in the context of an incarcerated parent:

> "[I]ncarceration neither compels nor precludes termination. Instead, we hold that incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012). Meanwhile, this Court has held that Subsections (a)(5) and (8), which are predicated on removal of the child from the care of the parent, are **not** applicable to a parent who is incarcerated at the time of removal and thus did not have physical custody. *In re Z.P.*, 994 A.2d 1108, 1123 n.2 (Pa. Super. 2010).

- 10 -

### IV. Father's Counsel's *Anders* Issues

We now consider the issues raised by Counsel in his *Anders* brief for Father's appeal:

> 1. Did the [orphans'] Court commit abuse of discretion or error of law when it concluded that [CYS] established grounds for termination pursuant to 23 Pa.C.S.[ ] § 2511(a)(8)?
>
> 2. Did the [orphans'] Court commit abuse of discretion or error of law when it concluded that the termination of parental rights was appropriate and in the child's best interest pursuant to 23 Pa.C.S.[ ] § 2511(b)?

*Anders* Brief at 7 (unpaginated).

With respect to Subsection 2511(a), Counsel refers only generally to (a)(8), broadly concluding that "the file, the transcript of proceedings . . . and applicable case law" support the orphans' court ruling. *See Anders* Brief at 7. We would conclude, however, that termination under Subsection 2511(a)(8) was **not** proper, where Father was incarcerated at the time (October 16, 2019) the orphans' court placed Child in Maternal Grandmother's care. *See In re Z.P.*, 994 A.2d at 1123 n.2; Orphans' Ct. Op. at 2.

Nevertheless, our independent review of the record, along with the orphans' court discussion, supports termination under Subsection 2511(a)(2). *See In re B.L.W.*, 843 A.2d at 384 (we need only agree with termination under any one subsection of 2511(a), in addition to subsection 2511(b), to affirm).

At the time of the February 2021 hearing, Child was six years old. Significantly, the record reveals that Father had not seen Child since July

- 11 -

2019, and that he is serving a state sentence with a minimum release date of July 6, 2021.[8]  N.T. at 49.  Additionally, a PFA order, under which Child is a protected party, remains in effect until July 24, 2022.  *Id.* at 52, 54.  CYS Caseworker Pommer reported that Child's trauma therapist does not recommend contact between Father and Child, as the therapist "feels it would be detrimental to [Child] at this point."  *Id.* at 114.

We consider Father's testimony that: (1) he completed mental health and drug and alcohol evaluations while incarcerated at SCI Camp Hill; and (2) he participated in parenting classes, and an alcohol assessment at the Open Door (with a recommendation for treatment) while incarcerated at Indiana County Jail.  N.T. at 49, 51.  However, while CYS acknowledged receipt of correspondence from Father, it was unaware of what services Father had completed.  *Id.* at 95.  Caseworker Pommer explained:

> [CYS Attorney:]  Now, with [F]ather, is the agency aware of whether or not he completed any of the ordered services throughout the life of this case?
>
> [Caseworker Pommer:] No.  [Father] did write several letters to the agency indicating he had completed assessments; however, we have never received any confirmation of that.
>
> Q.  We also heard some testimony about [Father] in terms of his understanding about a release needing to be signed.  Did you ever have those conversations with him?

---

[8] Where Father's minimum release date was July 6, 2021, it is unknown if he has been released.

A. I sent letters with the release attached. [Father] did return one in January of this year. I did ask several questions in the letter about specifically what assessments were completed, what the recommendations were, who the point of contact would be, but he did not respond to those questions.

Q. So . . . as of today, the agency is unaware of any services that [Father] has completed?

A. That's correct.

*Id.*

It is thus speculative when and if Father will be in a position to care for Child. At the time of the termination hearing, Child was six years old and in care for almost three years. As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006).

Hence, the record substantiates the conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused Child to be without essential parental control or subsistence necessary for his physical and mental well-being. ***See In re Adoption of M.E.P.***, 825 A.2d at 1272. Moreover, Father cannot or will not remedy this situation. ***See id.***

We next determine whether termination was proper under Section 2511(b). Under that subsection, we consider whether termination of parental rights will best serve the child's developmental, physical and emotional needs

and welfare. 23 Pa.C.S. § 2511(b). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P.*, 994 A.2d at 1121. "[A] parent's basic constitutional right to the custody and rearing of. . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

"When conducting a bonding analysis, the court is not required to use expert testimony. [Instead, s]ocial workers and caseworkers can offer evaluations as well." *In re Z.P.*, 994 A.2d at 1121. "Intangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). "'Above all else . . . adequate consideration must be given to the needs and welfare of the child.' A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *In re Z.P.*, 994 A.2d at 1121.

In determining that termination of Father's parental rights favors Child's needs and welfare under Section 2511(b), the orphans' court opined:

> [T]he Court turns to the uncontradicted expert testimony of Dr. Menta. Dr. Menta unequivocally concluded that Child should "have ongoing stability and permanency with [his foster parents]." [Bonding Assessment, Agency Exhibit 3, at 5]. The Court notes that Dr. Menta did not observe Child with Father, and, therefore, she was unable to comment as to the nature or quality of any

bond that Child may have with him. However, she did testify that Child has expressed fear of Father, and that she has no concerns about the termination of Father's parental rights. Finally, the testimony demonstrates that Child has a positive and secure bond with his foster parents. Therefore, the Court finds that terminating the parental rights of Father will best serve the "developmental, physical, and emotional needs and welfare" of Child. 23 Pa.C.S. [§] 2511(b).

Orphans' Ct. Op. at 20-21.

Upon review, we discern no abuse of discretion. We note Dr. Menta's testimony: "I did talk with [Child] about [his father]. He expressed fear of his biological father. He made reference to his father holding a gun and he demonstrated with his hand and said bang, bang. He became very anxious. His face became red. He was very uncomfortable with that." N.T. at 31. Caseworker Pommer recommended that "[t]he natural parents' parental rights be terminated and that [Child] remain in his current placement setting." *Id.* at 103. She likewise opined that it would be in Child's best interest to be adopted by his current placement option. *Id.* at 104.

Critically, the evidence revealed that Father had no contact with Child since July 2019 and is prevented from any contact pursuant to a PFA order in effect until July 24, 2022. N.T. at 54-55. Child's legal counsel represented to the orphans' court: "[Child] indicated to me he would like to live permanently with his foster parents. . . . I asked him why. He said because they take care of him. He indicated that he was happy and he wished to stay there long term." *Id.* at 155-56.

In light of the foregoing, we conclude the record supports the orphans' court's finding that Child's developmental, physical and emotional needs and welfare favor termination of parental rights pursuant to Subsection 2511(b). *See In re Z.P.*, 994 A.2d at 1121.

Our independent review of the record did not reveal any additional, non-frivolous issues overlooked by counsel. *See In re S.M.B.*, 856 A.2d at 1237. Accordingly, we agree with Father's counsel that the within appeal is wholly frivolous. As such, we affirm the portion of the decree terminating his parental rights and grant Counsel's petition to withdraw.

## V. Mother's Issues

As stated above, the orphans' court opinion discussed its decision to terminate Mother's parental rights under Subsection 2511(a)(2) and (b). She raises the following issues for our review:

> 1. Did the [orphans'] court err when it ruled that grounds for involuntary termination of Mother's parental rights under 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8) had been proven by clear and convincing evidence?
>
> 2. Did the [orphans'] court err in finding that termination would best serve the needs and welfare of the child pursuant to 23 Pa.C.S. § 2511(b)?

Mother's Brief at 10.

Mother maintains: "While [she] has undoubtedly experienced mental health issues, the evidence showed that during the relevant time period she has complied with the recommendations of the agency, utilized the services available to her, and made significant progress in alleviating the conditions

that led to the placement of the child." Mother's Brief at 23. Mother contends:

"Although [she] admittedly has a history of mental health difficulties, the

uncontroverted testimony showed that since her release from inpatient mental

health treatment, she had been completely compliant with the

recommendations of [CYS] and the orders of the trial court." *Id.* at 26-27.

Mother avers she cooperated in parenting classes, maintained stable housing,

and consistently attended visits with the child." *Id.* at 26-27.

Instantly, critical to the orphans' court's analysis was Mother's

"persistent and profound mental health and substance abuse issues."

Orphans' Ct. Op. at 6. In finding grounds for termination under Subsection

2511(a)(2), the orphans' court opined:

> The [c]ourt finds that this matter is strikingly similar to the facts
> of *In re Adoption of A.H.*, [247 A.3d 439 (Pa. Super. Mar. 3,
> 2021), *appeal denied*, ___ A.3d ___, 2021 WL 2909031 (Pa. Jul
> 12, 2021)]. In that case, the Pennsylvania Superior Court
> reviewed a termination of parental rights of a mother by the trial
> court; the trial court found that the mother suffered from
> "untreated psychiatric disorders, including schizoaffective
> disorder-bipolar type and post-traumatic stress disorder; that her
> mental health disability rendered her incapable of parenting; and
> finally, the [m]other's refusal to meaningfully treat her mental
> health meant that she could not remedy her parental incapacity."
> *In re Adoption of A.H.*[, 247 A.3d at 443].
>
> In affirming the trial court's determination, the Pennsylvania
> Superior Court set forth the requirements of 23 Pa.C.S.
> [§]2511(a)(2), and . . . pointed out that "[t]he grounds for
> termination are not limited to affirmative misconduct, but concern
> parental incapacity that cannot be remedied. Parents are required
> to make diligent efforts to the reasonably prompt assumption of
> full parental duties." *Id.*, *citing In re Z.P.*, 994 A.2d [at 1117].
> This Court acknowledges that the mother in *In re Adoption of
> A.H.* refused to cooperate with the [a]gency, while Mother in this

- 17 -

matter has been generally cooperative. However, this Court believes that the conclusion is the same, *i.e.*, that despite Mother's legitimate efforts to address her mental health and substance abuse issues, her progress after more than fifteen months is insufficient, and that Mother is still incapable of performing the essential parental duties for Child.

In reaching this conclusion, the Court highlights that Mother's mental health and substance abuse issues have persisted during the entire lifetime of Child. And with regard to whether these conditions can be remedied, Dr. Menta's credible and professionally uncontradicted testimony provided that Mother has not made the changes necessary to provide care for Child. . . .

*Id.* at 14-15.

Upon review, the record substantiates the conclusion that Mother's repeated and continued incapacity, abuse, neglect, or refusal has caused Child to be without essential parental control or subsistence necessary for his physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. Moreover, Mother cannot or will not remedy this situation. *See id.* Dr. Menta expressed in her Parenting Capacity Evaluation of Mother:

In summary, I have significant concerns regarding [Mother's] ability to put her child's needs above her own. She demonstrates no insight into her limitations as a parent. Her awareness of how this trauma has affect[ed] her son is minimal. She disclosed minimal information about her own mental health issues, and flat out denied any history of substance abuse problems. Without insight and awareness of the **need** to change, she is highly unlikely to **make** change.

Agency Exhibit 1 (Parenting Capacity Evaluation), at 6. Dr. Menta further testified, "I do not believe [Mother] has made significant change and I don't believe she's able to provide consistent and stable care for her child." N.T. at 38.

We are mindful of our standard of review set forth above, and reiterated most recently, in *In re S.K.L.R.*, ___ A.3d ___, 2021 WL 3624786 (Pa. Aug. 17, 2021), we must not substitute our judgment for that of the orphans' court. As we discern no abuse of discretion, we do not disturb the orphans' court's findings.

We next determine whether termination was proper under Section 2511(b). Here, the orphans' court opined:

> [CYS] presented testimony from Dr. Menta regarding the parent-child bond. Dr. Menta conducted a parent-child bond evaluation [and] an evaluation of the bond between the Child and the foster parents. The Court notes that the foster home was confidential, but the Bonding Assessment was introduced as Agency Exhibit 4. The Court finds Dr. Menta's evaluations to be thorough; she conducted a records review, an observation of Child with Mother, and an observation of Child in the foster home.
>
> In the Bonding Assessments, Dr. Menta concluded that Child should "have ongoing stability and permanency with [his foster parents]." Bonding Assessment, Agency Exhibit 3,[ at 5]. **Dr. Menta asserted that Child does have a bond with Mother; however, she opined that "there is some evidence that his attachment to her is an anxious, insecure attachment."** *Id.* Dr. Menta identified that Child has a secure and beneficial bond with his foster family. This bond was evidenced by his stated reliance on them, his "eager and enthusiastic" nature when answering questions about them, and his choice to draw his foster parents when asked to draw a picture of his family. [*Id.*] In [contrast], when discussing Mother, Child "seemed somewhat uncomfortable and anxious." *Id.* Based on the credible and uncontradicted testimony of Dr. Menta, the Court finds that the needs and the welfare of the child will be met through granting the [termination] Petition.

Orphans' Ct. Op. at 19-20 (emphasis added).

We note Caseworker Pommer confirmed Child's positive relationship with his foster parents, stating, "[Child] is very affectionate. He will climb up on the couch and hug his foster parents. He tells them he loves them. He'll ask them to participate in activities with him. They're interacting the entire time." N.T. at 96.

Mother, however, argues, "Given the credible testimony of [herself], Dr. Menta and Ms. Hauser regarding the child's affectionate behavior toward Mother, the [orphans'] court was unreasonable in determining that the needs and welfare of the child[ ] would be best met by severing [his] bond with Mother." Mother's Brief at 30.

We discern no abuse of discretion. For the reasons expressed by the orphans' court, the record supports the finding that Child's developmental, physical and emotional needs and welfare favor termination of parental rights pursuant to Section 2511(b). *See T.S.M.*, 71 A.3d at 267. As testified by Dr. Menta, "It's in the child's best interest to terminate [Mother's parental] rights. So even though there is a bond there, because of the negative nature of that bond, that insecure attachment, [termination] would actually lead to, over time, [Child] having more stability and more consistency." N.T. at 37. She, therefore, stated that it was "one hundred percent" in Child's best interest to terminate parental rights and proceed with adoption. *Id.* at 38-39. We reiterate Caseworker Pommer's recommendation that "[t]he natural parents' parental rights be terminated[, Child] remain in his current placement

setting[,]" and that it would be in Child's best interest to be adopted by his current foster parents. *Id.* at 103-04. Child's legal counsel also conveyed to court: "[Child] indicated to me he would like to live permanently with his foster parents. . . . I asked him why. He said because they take care of him. He indicated that he was happy[,] and he wished to stay there long term." *Id.* at 155-56.

Mother's argument that this Court should accept her "credible" testimony goes to the weight of the evidence. We cannot substitute our judgment for that of the orphans' court. *See In re S.K.L.R.*, ___ A.3d at ___, 2021 WL 3624786 at *12. For the foregoing reasons, we do not disturb the orphans' court findings that termination of Mother's parental rights was proper under Subsections 2511(a)(2) and (b).

## VI. Conclusion

Decree at 615 WDA 2021, terminating Father's parental rights, affirmed. Father's counsel's petition to withdraw from representation granted. Decree at 632 WDA 2021, terminating Mother's parental rights, affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/08/2021